## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| _____ | ) | |
| JEFFREY ALAN SPINDEL and KEVIN McCARTHY, on behalf of themselves and all others similarly situated, | )<br>)<br>)<br>) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 1:22-cv-10599 |
| | ) | |
| GORTON'S INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## GORTON'S, INC.'S MOTION TO DISMISS THE COMPLAINT

M<small>C</small>D<small>ERMOTT</small> W<small>ILL</small> & E<small>MERY</small> LLP

Mara Theophila (BBO # 704763)
200 Clarendon Street, Floor 58
Boston, MA 02116
(617) 535-4107

William P. Donovan, Jr. (admitted _pro hac vice,_ CA Bar # 155881)
2049 Century Park East
Suite 3200
Los Angeles, California
(310) 788-4121

Caroline A. Incledon (admitted _pro hac vice_, NY Bar # 5474309)
1 Vanderbilt Avenue
New York, New York 10017
(212) 547-5598

_Attorneys for Defendant Gorton's, Inc._

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

STATEMENT OF FACTS ....................................................................................................2

LEGAL STANDARD...........................................................................................................5

ARGUMENT ........................................................................................................................6

I.  Plaintiffs Fail to State a Claim Under New York and California Consumer Protection Statutes Because No Reasonable Consumer Would Have Been Misled by Gorton's Labeling ................................................................................................................6

    A.  No Reasonable Consumer Would Agree with Plaintiffs' Definition for the Term "Sustainably Sourced" ...................................................................................7

        1.  Gorton's Tilapia Packaging Makes No Representations About Animal Welfare or Environmental Standards...................................................7

        2.  Gorton's Explains What "Sustainably Sourced" Means on Its Website......8

        3.  Commonly Understood Definitions and Industry Guidance Do Not Support Plaintiffs' Unreasonable Definition of "Sustainably Sourced"......9

        4.  None Of The Authorities Cited By Plaintiffs Support Their Contrived Definition of "Sustainably Sourced" ........................................................10

    B.  In Any Event, Plaintiffs Fail to Plead Any Facts Suggesting that Gorton's Practices Render Its Labeling Misleading ............................................................12

        1.  Plaintiffs Do Not Allege That All of Gorton's Tilapia is Farmed in Pond Aquaculture in China ....................................................................12

        2.  Plaintiffs Do Not Allege that the Use of Ethoxyquin Is Above an Acceptable Level ....................................................................................13

II.  Plaintiffs' CLRA, FAL and UCL Claims Do Not Satisfy the Heightened Pleading Requirements of Rule 9(b)..........................................................................................14

III.  Plaintiffs Have Not Stated a Claim for Breach of Other State Consumer Protection Statutes.......................................................................................................................16

IV.  Plaintiffs Have Not Stated a Claim For Breach of Express Warranty ..............................17

V.  Plaintiffs Have Failed to State a Plausible Claim for Relief Based On Unjust Enrichment17

VI.  Plaintiffs' Attempts to Plead a Nationwide Unjust Enrichment and Breach of Express Warranty Class Fails.................................................................................................18

VII.  Plaintiffs Lack Standing to Pursue Injunctive Relief....................................................19

CONCLUSION..................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................6

*Axon v. Citrus World, Inc.*,
    354 F. Supp. 3d 170 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's*
    *Natural Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020).........................................14

*Beasley v. Conagra Brands, Inc.*,
    374 F. Supp. 3d 869 (N.D. Cal. 2019) ...................................................................15

*Becerra v. Dr Pepper/Seven Up, Inc.*,
    945 F.3d 1225 (9th Cir. 2019) ...............................................................................12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................6

*Buck v. Am. Airlines, Inc.*,
    476 F.3d 29 (1st Cir. 2007).......................................................................................6

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)..................................................................................................19

*In re Colonial Mortg. Bankers Corp.*,
    324 F.3d 12 (1st Cir. 2003).......................................................................................6

*DaCorta v. AM Retail Grp., Inc.*,
    2018 WL 557909 (S.D.N.Y. Jan. 23, 2018) ..........................................................19

*Ehlers v. Ben and Jerry's Homemade Inc.*,
    2020 WL 2218858 (D. Vt. May 7, 2020) ..............................................................20

*Ferrari v. Vitamin Shoppe, Inc.*,
    2018 WL 1586028 (D. Mass. Mar. 30, 2018)........................................................15

*Fitzgerald v. Polar Corp.*,
    2020 WL 6586628 (D. Mass. Nov. 10, 2020) .......................................................17

*In re G-Fees Antitrust Litig.*,
    584 F. Supp. 2d 26 (D.D.C. 2008) .........................................................................16

*Grajales v. P.R. Ports Auth.*,
   682 F.3d 40 (1st Cir. 2012) ........................................................................6, 14

*Haley v. City of Boston*,
   657 F.3d 39 (1st Cir. 2011) .......................................................................3, 4, 8

*Hines v. Overstock.com, Inc.*,
   2013 WL 4495667 (E.D.N.Y. Aug. 19, 2013) ...............................................19

*Jackson v. Johnson & Johnson & Janssen Pharm., Inc.*,
   330 F. Supp. 3d 616 (D. Mass. 2018) ..........................................................17

*Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*,
   298 F.3d 600 (7th Cir. 2002) .......................................................................10

*Lima v. Post Consumer Brands, LLC*,
   2019 WL 3802885 (D. Mass. Aug. 13, 2019) ..........................................17, 18

*A.G. ex rel. Maddox v. Elsevier, Inc.*,
   732 F.3d 77 (1st Cir. 2013) .............................................................................5

*Mazella v. Coca-Cola Co.*,
   548 F. Supp. 3d 349 (S.D.N.Y. 2021) ...........................................................12

*Nebraska v. E.P.A.*,
   331 F.3d 995 (D.C. Cir. 2003) ......................................................................10

*O'Hara v. Diageo-Guinness, USA, Inc.*,
   306 F. Supp. 3d 441 (D. Mass. 2018) ..........................................................19

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) .....................................................................................19

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015) ...........................................................................6

*Reed v. Zipcar, Inc.*,
   883 F. Supp. 2d 329 (D. Mass. 2012)
   *aff'd*, 527 F. App'x 20 (1st Cir. 2013) ...........................................................18

*Santagate v. Tower*,
   833 N.E.2d 171 (2005) ..................................................................................18

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985) ........................................................................15

*Steir v. Girl Scouts of the USA*,
   383 F.3d 7 (1st Cir. 2004) .............................................................................19

*Tatum v. Oberg*,
  650 F. Supp. 2d 185 (D. Conn. 2009) ..................................................................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ..............................................................................................6

*Thomas v. Costco Wholesale Corp.*,
  2013 WL 1435292 (N.D. Cal. Apr. 9, 2013) ......................................................15

*Univ. Baptist Church of Fort Worth v. Lexington Ins. Co.*,
  346 F. Supp. 3d 880 (N.D. Tex. 2018),
  *aff'd*, 787 F. App'x 194 (5th Cir. 2019) .............................................................16

*Vess v. Ciba–Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ............................................................................15

*Warth v. Seldin*,
  422 U.S. 490 (1975) ............................................................................................16

*In re Wellbutrin XL Antitrust Litig.*,
  260 F.R.D. 143 (E.D. Pa. 2009) ..........................................................................19

*Williams v. Gerber Prod. Co.*,
  552 F.3d 934 (9th Cir. 2008) ................................................................................6

*Young v. Wells Fargo & Co.*,
  671 F. Supp. 2d 1006 (S.D. Iowa 2009) ..............................................................18

**Statutes**

Cal. Civ. Code § 1750, *et seq.* ....................................................................... *passim*

Cal. Bus. & Prof. Code § 17500, *et seq.* ........................................................ *passim*

Cal. Bus. & Prof. Code § 17200, *et seq.* ........................................................ *passim*

N.Y. Gen. Business Law § 349(a) and § 350 ........................................................ 5-6

**Other Authorities**

Fed. R. Civ. P. 9(b) ...................................................................................... 2, 15-16

Fed. R. Civ. P. 12(b)(6) .............................................................................................5

21 C.F.R. § 172.140 ...................................................................................... 5, 13-14

21 C.F.R. § 573.380(a) ...................................................................................... 5, 13

75 Fed. Reg. 63,552 (Oct. 15, 2010) ......................................................................10

Federal Trade Commission, Green Guides, *Statement of Basis and Purpose* (Oct. 1, 2012) ..................................................................................................4, 9, 11

Katrin Zander et al., *Consumers' Willingness to Pay for Sustainable Seafood Made in Europe*, 30 J. Int'l Food & Agribusiness Mktg. 251, 252 (Dec. 22, 2017) ...............................................................................................................12

Loren McClenachan et al., *Fair Trade Fish: Consumer Support for Broader Seafood Sustainability*, 17 Fish & Fisheries 825 (Sept. 2016) ...............................................11

Ingrid Olesen et al., *Eliciting Consumers' Willingness to Pay for Organic and Welfare-Labelled Salmon in a Non-Hypothetical Choice Experiment*, 127 Livestock Sci. 218 (Feb. 2010) ..................................................................................12

Defendant Gorton's, Inc. ("Gorton's") submits the following memorandum in support of its Motion to Dismiss Plaintiffs' Jeffrey Alan Spindel's and Kevin McCarthy's ("Plaintiffs") Complaint (Dkt. 1).

## INTRODUCTION

Gorton's is a storied Massachusetts institution which has proudly sold a variety of fish products to families in and outside the Commonwealth since 1849.  In this baseless putative class action lawsuit, Plaintiffs seek to recover damages from Gorton's based on a single statement made on Gorton's tilapia packaging regarding its fish being "sustainably sourced."  To do so, Plaintiffs invent their own definition for "sustainably sourced," and then necessarily assert that Gorton's fails to meet their artificial definition.

Gorton's website, which is referenced on Gorton's tilapia packaging and is relied upon extensively in Plaintiffs' Complaint, describes what "sustainably sourced" means and how Gorton's meets the standard.  The website explains that Gorton's sources its tilapia from aquatic farms certified for Best Aquaculture Practices, and that Gorton's has a vibrant partnership with the New England Aquarium to ensure good practices are met for Gorton's fish.  Even if customers relied on a dictionary definition for "sustainably sourced," they would understand that this simply means "capable of continuing," and that raising fish in aquatic farms is fully consistent with that definition.

Plaintiffs do not, and cannot, point to a single authority suggesting that "sustainably sourced" means what they say it means.  Their citation in the Complaint to federal guidance falls flat because no single definition of "sustainably sourced" from the federal government exists. Nor are Plaintiffs' miscites to consumer surveys and studies successful, as not one of these sources actually addresses the meaning of "sustainably sourced," and most are completely

irrelevant.  Put simply, Plaintiffs offer no facts on which to credit their bare assertion about the meaning of "sustainably sourced" over what Gorton's clearly states on its website.  As a result, Plaintiffs have failed to allege a plausible claim for relief under the consumer protection statutes, let alone one that meets the heightened standard of Federal Rule of Civil Procedure Rule 9(b), which is required for many of Plaintiffs' claims.

In an attempt to bolster their flimsy claims, Plaintiffs also suggest that the feed for Gorton's tilapia may have contained trace amounts of a chemical called ethoxyquin and this too makes the "sustainably sourced" label deceiving.  This argument is wrong and a red herring:  the Food and Drug Administration expressly permits the presence of ethoxyquin in fish feed, as well as in the spices that Gorton's uses on at least one of its tilapia products.  Notably, Plaintiffs do not even try to allege that the amount of ethoxyquin is above the amount permitted by the FDA.  This flaw is fatal to their claims.

Among other deficiencies, Plaintiffs also lack standing to pursue injunctive relief, as they admit they no longer buy Gorton's fish and because they fail to plausibly allege that Gorton's packaging still says "sustainably sourced."

Accordingly, and for the reasons set forth below, the Motion should be granted and the Complaint dismissed without leave to amend.

## **STATEMENT OF FACTS**

*Gorton's, Inc.'s Commitment to Sustainability*

Gorton's produces high-quality fish products, including tilapia products.  (Compl. ¶¶ 70-71.)  Gorton's sells its products in the United States through large, well-known grocery chains and general merchandise retailers such as WalMart.  (Compl. ¶¶ 12 ,72.)

Gorton's has several sustainability and quality initiatives, which are designed to ensure that its processes "meet the highest standards" while "bring[ing] the goodness of the sea to everyone."[1]  As part of this effort, Gorton's has partnered with the New England Aquarium for over 14 years on projects designed to improve ocean health and promote sustainable fisheries.[2]  Gorton's works with the Aquarium's sustainable seafood program to analyze the global fish supplies that Gorton's uses for its business, with an eye towards promoting sustainability.[3]  Gorton's also sources over 99% of its seafood from sources certified with groups that assess sustainable fishing and aquaculture practices, including the Marine Stewardship Council (MSC), Aquaculture Stewardship Council (ASC), Best Aquaculture Practices (BAP), or in a credible Fishery Improvement Project.[4]  Furthermore, all of Gorton's suppliers go through an annual risk assessment and are subject to third party inspections and audits to ensure they meet Gorton's strict standards.[5]

Gorton's sources its fish from across the globe, including the Atlantic Ocean, Bering Sea, and from farm-raised aquaculture (a process the Complaint also refers to as "fish farming").[6]  (Compl. ¶ 30.)  Gorton's tilapia products specifically are sourced by farm-raised aquaculture

---

[1] Gortons, *We Are Gortons*, *available at* https://www.gortons.com/we-are-gortons/ (Theophila Decl., Ex. 2); *see also* Gortons, *Responsibility*, available at https://www.gortons.com/sustainability/ (Theophila Decl., Ex. 4).  The Complaint references Gorton's website at ¶¶ 2 n.3, 3 n.4, 17-18 nn.7-8, 19 nn.10-11, and the website is therefore incorporated by reference in the Complaint.  *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011).

[2] Gortons, *Responsibility*, available at https://www.gortons.com/sustainability/.

[3] Gortons, *In the News*, available at https://www.gortons.com/gortons-aquarium-see-partnering-gains/ (Theophila Decl., Ex. 5).

[4] Gortons, *Responsibility*, available at https://www.gortons.com/sustainability/.

[5] Gortons, *Responsibility*, available at https://www.gortons.com/sustainability/.

[6] Gortons, *FAQ*, available at https://www.gortons.com/frequently-asked-questions/ (Theophila Decl., Ex. 3).

from countries including China, a fact that Gorton's expressly discloses on its website.[7]  All the
farms that Gorton's sources tilapia from are certified by the BAP or ASC, meaning they have
been certified as following best practices for delivering farmed seafood.[8]

*The Complaint's Allegations*

Plaintiffs Spindel and McCarthy allegedly purchased Gorton's tilapia products from their
local retailers in New York and California.  (Compl. ¶¶ 75, 81.)  Plaintiffs do not allege–because
they cannot–that Gorton's charged a premium for products labeled as "sustainably sourced."
Plaintiffs fail to specify which products they purchased, instead claiming they purchased
Gorton's tilapia products "*with the claims about sustainability*" from "2018 through 2020."
(Compl. ¶¶ 75, 81.)  But Gorton's has multiple tilapia products, each of which has different
packaging.  Plaintiffs include a picture of Gorton's Signature Grilled Tilapia package in their
Complaint, but do not allege the package is still in use.  (Compl. ¶¶ 3, 75-76, 81-82.)

Plaintiffs challenge a statement on the packaging of Gorton's tilapia products, namely
that the products are "sustainably sourced."  (Compl. ¶ 3.)  The Federal Trade Commission
("FTC") has refused to define the term "sustainable… given the wide range of [possible]
meanings."  FTC, Green Guides, *Statement of Basis and Purpose*, at 258 (Oct. 1, 2012),
https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-
guides/greenguidesstatement.pdf.[9]  Even though there is no FTC definition for the term
"sustainable," Plaintiffs argue that Gorton's tilapia is not "sustainably sourced" because the

---

[7] Gortons, *FAQ*, available at https://www.gortons.com/frequently-asked-questions/.
[8] Gortons, *Responsibility*, available at https://www.gortons.com/sustainability/.
[9] The Complaint references the Green Guides at ¶ 21 n.12, and the Guides are therefore
incorporated by reference in the Complaint.  *Haley*, 657 F.3d at 46 (internal citations omitted).

tilapia is farmed – a practice Plaintiffs allege is unsustainable because fish farming supposedly uses "environmentally destructive and inhumane" practices.  (Compl. ¶¶ 5, 25.)

Plaintiffs also allege that Gorton's tilapia contains ethoxyquin, a chemical that allegedly "poses a risk for aquatic life."  (Compl. ¶¶ 38-40.)  However, the Food and Drug Administration ("FDA") expressly permits the presence of certain amounts of ethoxyquin in fish feed.  *See* 21 C.F.R. § 573.380(a).  The FDA also permits residues of ethoxyquin in or on chili powder, ground chili, and paprika – ingredients that are commonly used as seasonings on fish, including Gorton's Signature Grilled Tilapia.  21 C.F.R. § 172.140; *see also* (Theophila Decl., Ex. 1).  Plaintiffs do not allege what amount of ethoxyquin is present in Gorton's tilapia, let alone that the amount exceeds what is permitted by the FDA.

Based on these allegations, Plaintiffs bring claims under: New York General Business Law § 349(a) and § 350 ("NYGBL"); California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"); California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"); California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"); the deceptive practices acts of over thirty states; and the unjust enrichment and breach of express warranty common law of "each of the states where the Products are sold."  (Compl. ¶¶ 111-189.)  Although Plaintiffs only purchased Gorton's tilapia products in New York and California, Plaintiffs seek to represent a nationwide class of purchasers.  (Compl. ¶¶ 10, 75, 81.)

## LEGAL STANDARD

To evaluate a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must "'accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor.'"  *A.G. ex rel. Maddox v. Elsevier, Inc.,* 732 F.3d 77, 80 (1st Cir. 2013) (citation omitted).  To survive

dismissal, the Complaint must contain sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44–45 (1st Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although well-pleaded factual allegations should be accepted as true, "bald assertions, unsupportable conclusions . . . and the like need not be credited." *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 33 (1st Cir. 2007).

When evaluating motions to dismiss, courts may consider any "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." *In re Colonial Mortg. Bankers Corp.,* 324 F.3d 12, 20 (1st Cir. 2003); *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Gorton's website, Gorton's Signature Grilled Tilapia packaging, the FTC's Green Guides, and the articles cited in the Complaint are incorporated into the Complaint by reference and integral to the Complaint, and therefore may be considered by this Court on a motion to dismiss. (Compl. ¶¶ 2 n.3, 3, 4 n.4, 17-18 n.7-8, 19 n.10-11, 21 n.12, 22 n.14, 23 n.15, 24 n.16-17, 26 n.18, 51 n.41.)

## **ARGUMENT**

### I.     **Plaintiffs Fail to State a Claim Under New York and California Consumer Protection Statutes Because No Reasonable Consumer Would Have Been Misled by Gorton's Labeling**

To prevail on their claims under NYGBL §§ 349 and 350, and California's CLRA, FAL, and UCL, Plaintiffs must show that a reasonable consumer would have been misled or deceived by Gorton's packaging. *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (to prove conduct is misleading under NYGBL §§ 349 and 350, a plaintiff must demonstrate that "a reasonable consumer acting reasonably under the circumstances" would be misled); *Williams v. Gerber Prod. Co.,* 552 F.3d 934, 938 (9th Cir. 2008) (claims under the UCL, FAL, and CLRA

"are governed by the 'reasonable consumer' test" meaning "'members of the public are likely to be deceived'" (citation omitted)).  Plaintiffs fail to plead facts suggesting that any reasonable consumer would share their definition for "sustainably sourced."  Even if the Court were to credit this definition (which the Court should not), Plaintiffs fail to plead any facts to plausibly allege that Gorton's practices make its use of the phrase misleading.

**A.** **No Reasonable Consumer Would Agree with Plaintiffs' Definition for the Term "Sustainably Sourced"**

Plaintiffs fail to plausibly allege that a reasonable consumer would share their fanciful interpretation of the term "sustainably sourced."  Rather, Gorton's customers understand "sustainably sourced" to mean exactly what Gorton's states on its website: that Gorton's is committed to sourcing its tilapia from BAP-certified farms, and that Gorton's continues to work on its sustainability efforts with partners like the New England Aquarium.  Moreover, reasonable customers would consider the common definition of the phrase, which Gorton's easily meets.  None of the sources identified by Plaintiffs support their contrary definition.

**1.** **Gorton's Tilapia Packaging Makes No Representations About Animal Welfare or Environmental Standards**

Plaintiffs allege that they understood "sustainably sourced" on Gorton's packaging to be synonymous "*with high environmental and animal welfare standards*."  (Compl. ¶¶ 25, 48.)  But this definition exists only in Plaintiffs' imagination, as Gorton's tilapia does not say this—in fact, Gorton's makes no representations about animal welfare or environmental standards at all on its label:



(Compl. ¶ 3; Theophila Decl., Ex. 1.)  The package simply states: "sustainably sourced."  If

purchasers have any questions regarding what this means, the package also directs customers to a

sustainability page on Gorton's website (www.gortons.com/sustainability) that provides

additional information on Gorton's sustainability efforts.[10]  (Theophila Decl., Ex. 4.)

2.   Gorton's Explains What "Sustainably Sourced" Means on Its Website

Gorton's website expressly informs customers that its products are sustainably sourced

because they are certified as such by leading aquaculture groups.  Specifically, Gorton's explains

that over 99% of Gorton's seafood is "from sources that are certified with the Marine

Stewardship Council (MSC), Aquaculture Stewardship Council (ASC), Best Aquaculture

Practices (BAP) or in a credible Fishery Improvement Project."[11]  Plaintiffs do not allege that

this statement is deceptive or untrue, nor could they, as Gorton's tilapia products are farmed in

compliance with BAP or ASC standards.

The website also states that, to Gorton's, "sustainably sourced" seafood is seafood that is

sourced with the "health of the ocean and fish stocks" in mind.[12]  Gorton's delivers on this

promise through strategic partnerships, including its 14-year partnership with the New England

---

[10] The Complaint refers to Gorton's tilapia packaging at Compl. ¶¶ 3, 13, 15-16, 54, 76, 82.
Gorton's tilapia packaging is therefore incorporated by reference in the Complaint.  *See Haley*,
657 F.3d at 46 (internal citations omitted).
[11] *See* Gortons, *Responsibility*, *available at* https://www.gortons.com/sustainability/.

Aquarium, with which Gorton's has worked on sustainability efforts to improve ocean health, and to ensure that fish are farmed in ways that protect the long-term supply of seafood and minimize the impact on ecosystems.[13] Again, Plaintiffs fail to allege these statements are deceptive, nor could they, as farmed fish provides a supplemental fish source, and allows wild sources of fish to replenish.

      3.     <u>Commonly Understood Definitions and Industry Guidance Do Not Support Plaintiffs' Unreasonable Definition of "Sustainably Sourced"</u>

As discussed above, Gorton's clearly defines "sustainably sourced" on Gorton's website (which is linked on Gorton's tilapia packaging). However, to the extent this Court finds that the definition on Gorton's website is not dispositive, commonly understood definitions and guidance from industry leaders also provide no support for Plaintiffs' unreasonable definition. This guidance indicates that "sustainable" is not synonymous with high environmental or animal welfare standards, and instead implies non-environmental benefits, such as being capable of continuing. For example:

- Merriam-Webster defines "sustainable" as "capable of being sustained," or "using a resource so that the resource is not depleted or permanently damaged." Merriam-Webster, *Sustainable*, *available at* https://www.merriam-webster.com/dictionary/sustainable.

- The Environmental Protection Agency has defined "sustainable" as "characteristic of systems . . . the quality of being able to continue in their present state and mode of operation indefinitely." *See* FTC, *Green Guides*, *Statement of Basis and Purpose*, at 252 (Oct. 1, 2012).

Consumers share this understanding. In the FTC's proposed revisions to the Green Guides in 2010, the FTC discussed U.S. consumers' perceptions of the broader terms

---

[12] *Id.*

[13] *Id.*; *see also* Gorton's, *In The News*, *available at* https://www.gortons.com/gortons-seafood-and-the-new-england-aquarium-celebrate-10-years-of-improving-and-promoting-sustainable-fisheries/ (Theophila Decl., Ex. 6).

"sustainable" or "sustainability."  Fed. Trade Comm., Guides for the Use of Environmental

Marketing Claims, Proposed Revisions to Guidelines, 75 Fed. Reg. 63,552, 63,583 (Oct. 15,

2010) (emphasis added).  The FTC concluded that "perception evidence indicates that the claim

[sustainable] has *no single environmental meaning* to a significant number of consumers *or . . .*

*it conveys nonenvironmental characteristics (e.g., durable or long-lasting)*." *Id*. (emphasis

added).  The FTC also found that "consumers view sustainable claims differently than general

environmental benefit claims," and only a small minority of consumers stated that the term

"sustainable" suggested a product is "good for," "helps," or "benefits" the environment.  *Id*.

Nor is farmed fish inconsistent with sustainable sourcing, as it provides a continuous and

supplemental source of fish while allowing wild-caught fish sources to replenish.  For this

reason, the National Oceanic and Atmospheric Administration has expressly referred to farmed

fish as sustainable, stating that: "Marine aquaculture provides a . . . source of economically and

environmentally sustainable seafood that complements and supports our wild fisheries

production."  NOAA, *Marine Aquaculture*, available at https://www.fisheries.noaa.gov/insight/

understanding-marine-aquaculture.[14]  Tellingly, Plaintiffs do not allege that Gorton's will have to

begin sourcing tilapia from other sources, or that it will not be able to continue to source tilapia

from farms.

4.   None Of The Authorities Cited By Plaintiffs Support Their Contrived
Definition of "Sustainably Sourced"

Plaintiffs argue that the phrase "sustainably sourced" implies a high environmental and

animal welfare standard.  Yet the sources Plaintiffs rely on fail to help them, as they point to a

---

[14] A federal court may take judicial notice of information on an official government website.
*See, e.g., Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.,* 298 F.3d 600, 607 (7th Cir.
2002) (taking judicial notice of information from FDIC's official website); *Nebraska
v. E.P.A.,* 331 F.3d 995, 998 n.3 (D.C. Cir. 2003).

federal definition of sustainable (which does not exist) and consumer surveys (which are inapposite).

First, Plaintiffs try to argue that "[f]ederal guidance" from the FTC supports their definition of sustainable. (Compl. ¶¶ 20-21.) The Green Guides, however, expressly state that the FTC does not have the legal authority to define the term "sustainable," or a sufficient basis to provide specific guidance as to how consumers perceive the term. FTC, Green Guides, *Statement of Basis and Purpose*, at 258 (Oct. 1, 2012) ("the Commission does not have the legal authority" to define the term "sustainable"); *id* ("[G]iven the wide range of meanings of 'sustainable,' the Commission lacks a basis for providing this guidance.")

Even worse, Plaintiffs then cite to an FTC warning letter dealing with sustainability claims in the *diamond* industry—an industry that is completely inapposite here. (Compl. ¶ 21 n.12 (citing Federal Trade Commission, *FTC Sends Warning Letters to Companies Regarding Diamond Ad Disclosures* (Apr. 2, 2019), available at https://www.ftc.gov/news-events/news/press-releases/2019/04/ftc-sends-warning-letters-companies-regarding-diamond-ad-disclosures).)

Second, Plaintiffs state that that "consumer research shows that marketing like Gorton's leads consumers to believe that the Products are sustainably sourced in accordance with high environmental and animal welfare standards." (Compl. ¶ 14.) Not so, as not one of the surveys cited by Plaintiffs even addresses the meaning of "sustainably sourced":

- Plaintiffs cite Loren McClenachan et al., *Fair Trade Fish: Consumer Support for Broader Seafood Sustainability*, 17 Fish & Fisheries 825 (Sept. 2016), but that article discusses consumer perception of the term "*ecologically* sustainable." *See* (Compl. ¶ 24 n. 16-17.) No such claim is made here.

- Another study cited by Plaintiffs studied *European* (not American) consumers' willingness to pay for seafood with different sustainability attributes; furthermore, the study did not gauge consumer reactions to the label "sustainably sourced," but

- 11 -

to the term "sustainably produced."  (Compl. ¶¶ 22-23 n.14-15 (citing Katrin Zander et al., *Consumers' Willingness to Pay for Sustainable Seafood Made in Europe*, 30 J. Int'l Food & Agribusiness Mktg. 251, 252 (Dec. 22, 2017)).)

- The last source Plaintiffs rely on deals with Norwegian consumers' willingness to pay for "organic and animal welfare-labelled salmon."  (Compl. ¶ 51 n.41 (citing Ingrid Olesen et al., *Eliciting Consumers' Willingness to Pay for Organic and Welfare-Labelled Salmon in a Non-Hypothetical Choice Experiment*, 127 Livestock Sci. 218 (Feb. 2010), https://pubag.nal.usda.gov/catalog/775401).)

In short, not *one* of the sources Plaintiffs cite regarding consumer interpretation and understanding deals with the phrase "sustainably sourced," rendering them irrelevant.  *See, e.g.*, *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1230-31 (9th Cir. 2019) (finding consumer survey insufficient to establish the plausibility of plaintiff's false advertising claims); *Mazella v. Coca-Cola Co.*, 548 F. Supp. 3d 349, 357–58 (S.D.N.Y. 2021) (granting motion to dismiss, and holding that consumer survey cited by plaintiffs did not support plaintiffs' allegation that statement "Slightly Sweet" on product label implied that product was low in sugar).

**B.      In Any Event, Plaintiffs Fail to Plead Any Facts Suggesting that Gorton's Practices Render Its Labeling Misleading**

Even if the Court were to find that a reasonable consumer would share Plaintiffs' definition, Plaintiffs' claims still fail.  Plaintiffs argue that Gorton's tilapia is not "sustainably sourced" because (i) *some* of Gorton's tilapia is raised in aquatic farms in China and (ii) *some* of Gorton's tilapia contain *some* amount of ethoxyquin.  Neither assertion is sufficient to state a claim here.

1.      <u>Plaintiffs Do Not Allege That All of Gorton's Tilapia is Farmed in Pond Aquaculture in China</u>

Even if farmed fish cannot be considered sustainably sourced under Plaintiffs' definition, Plaintiffs' Complaint still fails because Plaintiffs have failed to allege that all of Gorton's tilapia is farmed in China.  The Complaint includes a smattering of allegations regarding the environmental and animal welfare impact of "pond aquaculture" in China.  (Compl. ¶¶ 29-48.)

However, the Complaint does not allege that *all* tilapia in China are farmed in this way, or specifically allege that Gorton's tilapia is grown in these ponds.  Instead, the Complaint merely alleges that *some* of Gorton's tilapia comes from China, and that pond aquaculture is *sometimes* used in China.  (Compl. ¶ 26 ("Upon information and belief, the Products are made from tilapia sourced, ***at least in part***, from China" (emphasis added)); ¶ 29 ("Tilapia farms in China use ***primarily*** an ecologically dangerous method of tilapia production known as pond aquaculture" (emphasis added)).  Because Plaintiffs fail to sufficiently link Gorton's products to pond aquaculture in China, their claims fail.

        2.    <u>Plaintiffs Do Not Allege that the Use of Ethoxyquin Is Above an Acceptable Level</u>

Plaintiffs also allege that Gorton's tilapia cannot be sustainably sourced because of the use of the chemical "ethoxyquin" as a preservative in industrial fish feed, which poses "risks[s] for aquatic life" and the environment.  (Compl. ¶¶ 38-40.)[15]

Plaintiffs ignore the fact that the FDA ***expressly permits*** companies like Gorton's to use ethoxyquin in its products.[16]  The FDA has established certain tolerances of ethoxyquin residue that may be found in animal fat or meat as a result of the use of ethoxyquin in animal feed.  *See* 21 C.F.R. § 172.140; 21 C.F.R. § 573.380(a).  In addition, the FDA has established food additive tolerances for residues of ethoxyquin in/on chili powder, ground chili spices, and paprika, as

---

[15] Plaintiffs also argue that the presence of ethoxyquin is evidence of the "true nature and sourcing" of Gorton's products, meaning that the fish were farmed.  (Compl. ¶ 55.)  However, Plaintiffs' allegations that Gorton's hides the "true nature and sourcing" of its tilapia products is directly contradicted by the clear disclosures on Gorton's website, which state that Gorton's "procure[s] farm-raised aquaculture seafood, including tilapia and shrimp, from various countries, including Ecuador, China, Indonesia, Vietnam, and India."  *See* Gortons, *FAQ*, available at https://www.gortons.com/frequently-asked-questions/.  On its website, Gorton's also discloses that it sources its fish from sources that are certified by the ASC or BAP, both of which only certify *farmed* seafood.

[16] Instead, the Plaintiffs rely on European Union guidance, which is irrelevant.  (Compl. ¶ 39.)

ethoxyquin is commonly used in these spices to help preserve color.  21 C.F.R. § 172.140 ("Ethoxyquin… may be safely used as an antioxidant for preservation of color in the production of chili powder, paprika, and ground chili at levels not in excess of 100 parts per million."). Plaintiffs do not allege the level at which ethoxyquin was allegedly found in one of Gorton's products, let alone allege that the level exceeds the tolerances expressly permitted by the FDA, which is fatal to their claims.  *See, e.g.*, *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018) ("Given the widespread use of herbicides, the court finds it 'implausible that a reasonable consumer would believe that a product labeled [natural] could not contain a trace amount of glyphosate that is far below the amount' deemed tolerable by the FDA."), *aff'd sub nom. Axon v. Florida's Natural Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020).

Even assuming that the use of ethoxyquin in fish feed is inconsistent with "sustainably-farmed" fish, as Plaintiffs contend, the ethoxyquin allegedly detected in Gorton's products may not have come from fish feed at all.  Some of Gorton's tilapia products—including Gorton's Signature Grilled Tilapia, which Plaintiffs reference in the Complaint (Compl. ¶ 3)—contain paprika.  (Theophila Decl., Ex. 1 at "Ingredients.")  Because ethoxyquin can be added to paprika as a color preservative, the ethoxyquin detected could just as plausibly be due to the inclusion of paprika in the final product.  *See Grajales,* 682. F.3d at 44–45 (a complaint must "give rise to more than a mere possibility of liability").  Because Plaintiffs have failed to allege that the presence of any (let alone excess) ethoxyquin results from the use of ethoxyquin in fish feed, they have failed to plausibly allege that Gorton's tilapia is not sustainably sourced.

## II.   Plaintiffs' CLRA, FAL and UCL Claims Do Not Satisfy the Heightened Pleading Requirements of Rule 9(b)

Plaintiffs' CLRA, FAL and UCL claims fail for the separate reason that they are not pled with particularity.  Claims under California's FAL, UCL, and CLRA that sound in fraud trigger

the heightened pleading standard of Rule 9(b).  *See Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1102–05 (9th Cir. 2003).  Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "'The plaintiff must set forth what is false or misleading about a statement, and why it is false.'"  *Vess,* 317 F.3d at 1102–05.

Plaintiffs' fraud allegations are not stated with particularity.  The Complaint does not allege with specificity which tilapia products the Plaintiffs purchased, or when.  Rather, the Complaint states that Plaintiffs purchased "Gorton's tilapia Products with the claims about sustainability" from "2018 through 2020."  (Compl. ¶¶ 75, 81.)  However, Gorton's sells multiple tilapia products, and Plaintiffs fail to allege that the products or packaging were substantially similar.[17]  Nor do Plaintiffs plausibly allege that Gorton's tilapia products still say "sustainably sourced" on the label.

Because Plaintiffs fail to specify which products they purchased, or when, Gorton's is unable to ascertain the packaging that Plaintiffs allege to have been deceived by.  Therefore, Plaintiffs' allegations are insufficient to allow Gorton's to "defend against the charge."  *See Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see also Beasley v. Conagra Brands, Inc.,* 374 F. Supp. 3d 869, 881 (N.D. Cal. 2019) (allegations that plaintiff "regularly purchased Crunch 'n Munch during the Class Period" were insufficient to meet Rule 9(b), particularly when the defendant stopped the challenged practice during the relevant time period).  This deficiency alone requires dismissal of the UCL, FAL, and CLRA claims.  *Thomas v. Costco Wholesale Corp.,* 2013 WL 1435292, at *6 (N.D. Cal. Apr. 9, 2013) (dismissing complaint

---

[17] Separately, Plaintiffs also lack standing to assert misrepresentation claims on behalf of Gorton's tilapia products that do not have, and have never had, "substantially similar" sustainably sourced labels.  *See Ferrari v. Vitamin Shoppe, Inc.,* 2018 WL 1586028, at *2 n.4 (D. Mass. Mar. 30, 2018).

alleging UCL, FAL and CLRA violations where plaintiff "fails to unambiguously specify the particular products that have violated particular labeling requirements . . . [and] the allegedly unlawful representations that were on which products").

## III.   Plaintiffs Have Not Stated a Claim for Breach of Other State Consumer Protection Statutes

In Count VI, Plaintiffs allege violations of dozens of other states', and the District of Columbia's, consumer protection statutes.  Although the specifics of each statute vary, "[t]he modern consumer protection statutes in effect in all the states prohibit deceptive acts or practices in one form or another." § 128 STATE INTERPRETATIONS, CONSUMER LAW SALES PRACTICES AND CREDIT REGULATION.  As described above, because Plaintiffs fail to allege that the "sustainably sourced" label was deceptive, their claims under state consumer protection statutes fail.  Moreover, because they are based in fraud, Rule 9(b) may apply to many of these claims, and Plaintiffs do not meet Rule 9(b)'s requirements.  *See, e.g., Tatum v. Oberg*, 650 F. Supp. 2d 185, 195 (D. Conn. 2009) (Rule 9(b) applies to claims under the Connecticut Unfair Trade Practices Act); *Univ. Baptist Church of Fort Worth v. Lexington Ins. Co.*, 346 F. Supp. 3d 880, 889 (N.D. Tex. 2018) ("Claims under the [Texas Deceptive Trade Practices Act] are subject to… Rule 9(b)"), *aff'd*, 787 F. App'x 194 (5th Cir. 2019).

Finally, Plaintiffs do not allege that they are entitled to seek relief under the laws of any state other than New York and California, where they reside.  To satisfy the requirement of Article III standing, Plaintiffs are required to allege that they personally have been injured, "not that injury has been suffered by other, unidentified members of the class[.]" *Warth v. Seldin*, 422 U.S. 490, 502 (1975).  The possibility that absent members of the class might have standing to pursue claims under the indicated state statutes does not suffice to confer standing on named Plaintiffs.  *Id.; see also In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 36 (D.D.C. 2008).

Because Plaintiffs lack standing to pursue claims under the laws of all states except for California and New York, claims under those other state statutes must be dismissed.

## IV.     Plaintiffs Have Not Stated a Claim For Breach of Express Warranty

In order to assert a viable claim for the breach of an express warranty, a plaintiff must plausibly allege that an express promise was made in connection with a transaction.  *See Jackson v. Johnson & Johnson & Janssen Pharm., Inc*., 330 F. Supp. 3d 616, 627 (D. Mass. 2018) ("'[T]he plaintiff must demonstrate that the defendant promised a specific result'").  Because Plaintiffs do not plausibly allege that the phrase "sustainably sourced" is false, Plaintiffs cannot state a breach of warranty claim.  *Lima v. Post Consumer Brands, LLC,* 2019 WL 3802885, at *9 (D. Mass. Aug. 13, 2019) (dismissing breach of express warranty claim where "Honey Bunches of Oats" both "contains and tastes like honey," and defendants did not warrant that the cereal would be predominantly sweetened with honey); *Fitzgerald v. Polar Corp.,* 2020 WL 6586628, at *4 (D. Mass. Nov. 10, 2020) (dismissing breach of express warranty claim because label stating that drink was "Made From Real Ginger" did not constitute an affirmation or promise that the product was made using ginger root or contained a certain amount of ginger).

## V.     Plaintiffs Have Failed to State a Plausible Claim for Relief Based On Unjust Enrichment

Plaintiffs have not plausibly alleged a claim for unjust enrichment either.  Plaintiffs allege that Gorton's was unjustly enriched because Plaintiffs purchased tilapia products that "were not what Gorton's represented them to be."  (Compl. ¶ 188.)  However, Plaintiffs' claim fails because—as with their other claims—Plaintiffs have not plausibly alleged that consumers would be misled by the statement "sustainably sourced" on Gorton's tilapia packaging.  *Fitzgerald*, 2020 WL 6586628 at *5 ("As Polar made no actionable misrepresentation to [plaintiff] [on Polar ginger ale label], the retention of the purchase price cannot be found to be unjust.").

Plaintiffs' claim also fails because they have an adequate remedy at law.  When "an adequate remedy at law" exists, an "equitable remedy of unjust enrichment is not available." *Santagate v. Tower,* 833 N.E.2d 171, 176 (2005).  Here, Plaintiffs have adequate statutory remedies available.  Therefore, their unjust-enrichment claim should be dismissed.  *See Reed v. Zipcar, Inc.,* 883 F. Supp. 2d 329, 334 (D. Mass. 2012) (the "existence of . . . [a] claim for unfair and deceptive acts and practices precludes [a plaintiff] from bringing equitable claims for unjust enrichment") *aff'd,* 527 F. App'x 20 (1st Cir. 2013); *Lima,* 2019 WL 3802885 at *10 (dismissing unjust enrichment claim because, even assuming "Plaintiffs had in fact been reasonably misled by [the product's] packaging, they would have no shortage of . . . statutory remedies").[18]

## VI.   Plaintiffs' Attempts to Plead a Nationwide Unjust Enrichment and Breach of Express Warranty Class Fails

Plaintiffs argue that Gorton's is liable for breach of express warranty and unjust enrichment "under the common laws of each of the states where the Products are sold."  (Compl. ¶¶ 185, 189.)  Plaintiffs thus seek to certify a "Multistate Subclass" consisting of individuals who purchased the products in 33 different states and the District of Columbia.  (Compl. ¶ 92.)

However, Plaintiffs fail to identify what states' laws, if any, form the purported basis of their breach of express warranty and unjust enrichment claims.  (Compl. ¶¶ 178-189.) Furthermore, Plaintiffs fail to cite the law of any state in particular, instead relying on conclusory allegations.  *See id.*  This style of pleading is plainly insufficient.  *Young v. Wells Fargo & Co.,* 671 F. Supp. 2d 1006, 1016–17 (S.D. Iowa 2009) ("[w]ithout reference to the law of any particular state," common law claims including an unjust enrichment claim were "so vague that

---

[18] The viability of a statutory claim is "beside the point;" the "mere availability" of an adequate remedy at law bars the unjust enrichment claim. *Reed,* 883 F. Supp. 2d at 334.  Thus, even if this Court dismisses Plaintiffs' statutory claims, Plaintiffs should not be permitted to plead unjust enrichment in the alternative.

[defendant] cannot reasonably prepare a response"); *In re Wellbutrin XL Antitrust Litig.,* 260 F.R.D. 143, 167 (E.D. Pa. 2009) (rejecting plaintiffs' argument that unjust enrichment claims are substantially identical across different, states and dismissing unjust enrichment claims that were not linked to the law of any particular state).[19]

## VII.    Plaintiffs Lack Standing to Pursue Injunctive Relief

In addition to monetary damages, Plaintiffs also seek injunctive relief.  (Compl., Prayer for Relief at 34.)  To have standing to obtain injunctive relief, plaintiffs must demonstrate that they face a threat of future harm from the defendants.  *Steir v. Girl Scouts of the USA,* 383 F.3d 7, 16 (1st Cir. 2004).  "Past exposure to illegal conduct" is insufficient.  *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).  Plaintiffs admit they no longer buy Gorton's tilapia.  (Compl. ¶ 79 ("Plaintiff Spindel . . . does not currently purchase Gorton's Products"); *id.* ¶ 85 ("Plaintiff McCarthy . . . does not currently purchase Gorton's Products.").)  Accordingly, there is no threat of future injury to Plaintiffs and they thus lack standing to seek an injunction.[20]  *O'Hara v. Diageo-Guinness, USA, Inc.,* 306 F. Supp. 3d 441, 466–67 (D. Mass. 2018) ("Plaintiff lacks standing to seek an injunction because he does not allege that he is likely to purchase Extra Stout in the future"); *see also DaCorta v. AM Retail Grp., Inc.*, 2018 WL 557909, at *4 (S.D.N.Y. Jan. 23, 2018) (allegation that plaintiff would not have purchased the product "but for" the alleged misrepresentation is "a concession that she will not purchase the product in the future").

---

[19] *See also Hines v. Overstock.com, Inc.*, 2013 WL 4495667, at *1, 12 (E.D.N.Y. Aug. 19, 2013) (dismissing unjust enrichment claim where "Plaintiff failed to set forth the law under which she brings the unjust enrichment claim.").

[20] Plaintiffs' allegations that they "wish[] to be able to continue purchasing Gorton's products," and would purchase them if the allegedly deceptive labeling was removed, are insufficient. (Compl. ¶¶ 80, 86.)  Speculative claims regarding what Plaintiffs *might* do in the future do not warrant injunctive relief.  *See City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983).

More fundamentally, there can be no real or immediate threat of future injury to Plaintiffs for the additional reason that Plaintiffs do not plausibly allege that the phrase "sustainably sourced" still is used on the packaging for Gorton's tilapia products.  Plaintiffs allege that from 2018-2020 they saw and relied on Gorton's Signature Grilled Tilapia package, but do not allege that that package is still in use.  (Compl. ¶¶ 3, 75-76, 81-82.)  If the challenged statement is no longer on the label, there can be no threat of future injury to Plaintiffs—or the rest of the putative class.  *Ehlers v. Ben and Jerry's Homemade Inc*., 2020 WL 2218858, *10-11 (D. Vt. May 7, 2020) (dismissing claim for injunctive relief because allegedly deceptive phrase was removed from the product, making "any possibility of future deception . . . non-existent").

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss the Complaint without leave to amend.

Dated:  Boston, Massachusetts
        June 22, 2022

MCDERMOTT WILL & EMERY LLP

      */s/  Mara Theophila*
Mara Theophila (BBO # 704763)
200 Clarendon Street, Floor 58
Boston, MA 02116
(617) 535-4107

William P. Donovan, Jr. (admitted *pro hac vice,* CA Bar # 155881)
2049 Century Park East
Suite 3200
Los Angeles, California
(310) 788-4121

- 20 -

Caroline A. Incledon (admitted *pro hac vice*, NY Bar # 5474309)
1 Vanderbilt Avenue
New York, New York 10017
(212) 547-5598

*Attorneys for Defendant Gorton's, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that this motion, the accompanying affidavit, and exhibits, filed through the Court's ECF system, will be sent electronically to the registered participants in this matter on the Notice of Electronic Filing (NEF).

/s/ *Mara Theophila*
Mara Theophila (BBO # 704763)