# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JEFFREY ALAN SPINDEL, and KEVIN McCARTHY, on behalf of themselves and all others similarly situated, | ) ) ) | Case No. 1:22-cv-10599-PBS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GORTON'S INC., | ) | |
| | ) | |
| Defendant. | ) | |

## [PROPOSED] BRIEF OF *AMICI CURIAE* GLOBAL SEAFOOD ALLIANCE AND THE NEW ENGLAND AQUARIUM
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Sarah P. Kelly
NUTTER, MCCLENNEN & FISH, LLP
Seaport West, 155 Seaport Blvd.
Boston, MA 02210
(617) 439-2000
skelly@nutter.com

*Attorneys for Nonparty Amicus Curiae*
*New England Aquarium*

Mark B. Rosen
PIERCE ATWOOD LLP
One New Hampshire Avenue
Suite 350
Portsmouth, New Hampshire 03801
(603) 433-6300
mrosen@pierceatwood.com

Joshua D. Dunlap
PIERCE ATWOOD LLP
254 Commercial Street
Portland, ME 04101
(207) 791-1103
jdunlap@pierceatwood.com

*Attorneys for Nonparty Amicus Curiae*
*Global Seafood Alliance*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................... ii

STATEMENT OF AMICUS REGARDING ITS AUTHORITY TO FILE, IDENTITY,
AND INTEREST ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 3

ARGUMENT ..................................................................................................................... 5

I.      New York and California Law Prohibits Only Deceptive Conduct That Is
        Misleading to a Reasonable Consumer. ................................................................ 5

II.     References to "Sustainably Sourced" Seafood Would Be Understood by a
        Reasonable Consumer to Indicate Compliance with Industry-Leading
        Standards, Such as BAP, for Responsible Aquaculture. ....................................... 6

III.    Plaintiffs Have Not Plausibly Alleged That Gorton's Tilapia Products Fail
        to Meet Industry-Recognized Standards for Responsible Aquaculture. ............... 9

        A.      Industry-leading standards such as BAP are designed to promote
                responsible aquaculture by requiring food safety, social responsibility,
                environmental responsibility, and animal health and welfare. ................. 9

        B.      Certification for aquaculture farms under industry-leading standards
                such as BAP promote responsible aquaculture by requiring adherence
                to rigorous guidelines regarding animal welfare and use of antibiotics
                and chemicals. ......................................................................................... 10

                1.      The Complaint does not allege any failure to abide by
                        industry-leading standards, such as those established by
                        BAP, for the safe employment of net pen aquaculture. ............... 11

                2.      The Complaint does not allege any failure to abide by
                        industry-leading standards, such as those established by
                        BAP, for the safe employment of chemicals and antibiotics. ....... 15

        C.      Certification under industry-leading standards such as BAP requires a
                rigorous audit by independent, accredited third parties. .......................... 17

        D.      A reasonable consumer would understand references to "sustainably
                sourced" seafood to refer to seafood sourced from practices certified
                to comply with industry-leading standards, such as BAP. ....................... 19

CONCLUSION ................................................................................................................ 20

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Delaney v. Baker*,
   511 F. Supp. 3d 55 (D. Mass. 2021) ................................................................... 4

*Denius v. Dunlap*,
   330 F.3d 919 (7th Cir. 2003) ............................................................................. 6

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ......................................................................... 5, 6

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) .......................................................................... 5, 6

*Gent v. CUNA Mut. Ins. Society*,
   611 F.3d 79 (1st Cir. 2010) ............................................................................... 6

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
   127 F. Supp. 3d 156 (S.D.N.Y. 2015) ................................................................ 4

**STATUTES**

Cal. Bus. & Prof. Code § 17200 *et seq.* .................................................................. 5

Cal. Bus. & Prof. Code § 17500 *et seq.* .................................................................. 5

Cal. Civ. Code §§ 1750-1785 .................................................................................. 5

GBL § 349 ............................................................................................................... 5

GBL § 350 ............................................................................................................... 5

**REGULATIONS**

16 C.F.R. § 260.2 ........................................................................................... 5, 15, 17

**OTHER AUTHORITIES**

BAP Aquaculture Facility Certification, BAP Farm Standard, *available at*
   https://www.bapcertification.org/Downloadables/pdf/PI%20-%20Standard
   %20-%20Farm%20Standard%20-%20Issue%203.0%20-%2001-March-2021-
   GSA.pdf .................................................................................................. *passim*

Page(s)

BAP Auditor Competency and Course Approval Requirements, Issue 11.3, *available at*
https://www.bapcertification.org/Downloadables/pdf/BAP%20-
%20Auditor%20Competency%20and%20Course%20Approval%20Requirements
%20-%20Issue%2011.3%20-%2005-January-2021.pdf ................................................... 18

Best Aquaculture Practices Standards Development, *available at*
https://www.bapcertification.org/Downloadables/pdf/GSA%20-
%20Standards%20Process%20Document%20-%20Issue%203.0%20-%2025-
February-2022.pdf ................................................................................................................ 10

Global Seafood Alliance, Best Aquaculture Practices Standards, Issue 14.10, *available at*
https://www.bapcertification.org/Downloadables/pdf/BAP%20-
%20CB%20Requirements%20Document%20-%20Issue%2014.10%20-%2018-
August-2021.pdf ..................................................................................................... 17, 18, 19

Gorton's, *Responsibility*, https://www.gortons.com/sustainability/ ................................................ 4

https://www.bapcertification.org/Home .......................................................................... 4, 5, 9, 10

https://www.bapcertification.org/Producers ................................................................................... 19

https://www.bapcertification.org/Standards ................................................................................... 10

https://www.bapcertification.org/WhatWeDo ............................................................................... 4, 5

https://www.bapcertification.org/WhatWeDo/ProgramIntegrity .................................................. 17

https://www.bapcertification.org/WhereToFind ............................................................................... 8

https://www.bapcertification.org/WhoWeAre ................................................................................ 10

https://www.fao.org/publications/card/en/c/0ec15d4a-6295-51a5-af16-5c724c62de25/ .............. 7

https://www.ourgssi.org/gssi-recognized-certification/ .................................................................. 7

https://www.ourgssi.org/what-we-do/; https://www.ourgssi.org/gssi-ssci-collaboration/............. 7

https://www.seafoodwatch.org/ ........................................................................................................ 7

https://www.seafoodwatch.org/recommendation/tilapia/tilapia-25769?species=231 ............. 7, 20

Kroger Seafood Sustainability Policy, *available at* https://www.thekrogerco.com/wp-
content/uploads/2018/12/The-Kroger-Co_Seafood-Sustainability-Policy_2018-
July.pdf................................................................................................................................... 8

NOAA Fisheries, Sustainable Seafood, *available at*
https://www.fisheries.noaa.gov/topic/sustainable-seafood#farmed-seafood ...................... 6

Page(s)

NOAA Fisheries, Understanding Marine Aquaculture, *available at*
https://www.fisheries.noaa.gov/insight/understanding-marine-aquaculture ..................... 6

Walmart Seafood Policy, *available at*: https://corporate.walmart.com/policies#seafood-
policy........................................................................................................................ 8

## STATEMENT OF AMICUS REGARDING
## ITS AUTHORITY TO FILE, IDENTITY, AND INTEREST

Global Seafood Alliance ("GSA")[1] and the New England Aquarium ("Aquarium") appear as *amici curiae* pursuant to a motion for leave filed contemporaneously herewith.

*Identity of Amici.* GSA is an international, non-profit trade association dedicated to advancing environmentally and socially responsible aquaculture. GSA has more than 3,000 members, and is active in over 60 countries around the globe. GSA's vision is a world that embraces and enables the role of responsibly farmed seafood in meeting global nutrition needs, and its mission is to promote responsible aquaculture practices through education, advocacy, and demonstration. GSA promotes this vision and mission by encouraging innovation on a global scale; by incentivizing producers to adopt a rigorous set of best practices; by building meaningful partnerships with academic institutions, governments and non-governmental organizations recognized as worldwide leaders in environmental and social responsibility; and by providing educational resources. For over 20 years, GSA has demonstrated its commitment to feeding the world through responsible and sustainable aquaculture by improving practices throughout the farming, processing, and distribution of aquaculture products.

Founded in 1969, the Aquarium is a global leader in marine conservation and a catalyst for global change through public engagement, commitment to marine animal conservation, leadership in education, innovative scientific research, and effective advocacy for vital and vibrant oceans.

*Interests of Amici.* GSA is deeply concerned about improving the sustainability of aquaculture. Given that our oceans are being fished to their limits, humans need alternate sources of seafood to feed the planet's growing population. Aquaculture is the tool to fill the gap of seafood

---

[1] GSA was formerly known as Global Aquaculture Alliance ("GAA"), and that name is also used herein in relation to documents still bearing GAA branding.

supply. By 2030, 62% of all seafood produced for human consumption will come from aquaculture. Farming fish responsibly is the solution to providing future generations with access to healthy and environmentally friendly protein options. To promote responsible aquaculture, GSA promulgates Best Aquaculture Practices ("BAP") standards and certifications. BAP certification standards, which are set by independent and multi-stakeholder committees, are scientific, rigorous, and comprehensive guidelines for responsible aquaculture. In GSA's view, maintaining the integrity and value of responsible aquaculture standards generally, and BAP standards and certifications particularly, is essential to its mission of increasing the use of responsible aquaculture, and the concomitant availability of responsibly sourced aquaculture products.

The Aquarium has a critical interest in driving industry towards best practices that balance human use of the ocean with the need for a healthy, thriving ocean now and in the future. To that end, the Aquarium pioneered the approach of forming impactful partnerships with seafood companies to drive environmental improvements globally. The Aquarium's ocean conservation research, policy, and advising arm, the Anderson Cabot Center for Ocean Life ("ACCOL"), has partnered with Gorton's Inc. ("Gorton's") on seafood sustainability for 14 years, as both parties have a shared commitment to sustainability practices, working collaboratively to conserve our ocean and provide healthy, life-sustaining food to consumers. ACCOL staff advise Gorton's on effective, responsible and sustainable sourcing strategies, such as combining seafood species selection with credible third-party certification to meet reasonable consumer perceptions for sustainably sourced products. ACCOL has advised Gorton's to utilize credible third-party certification to meet reasonable consumer perceptions for sustainably sourced farmed tilapia, resulting in Gorton's' requirement that 100% of its farmed tilapia are sourced from farms that are, at a minimum, certified by either BAP or Aquaculture Stewardship Council ("ASC").

*Amici* therefore have a vital interest in promoting the use of best practices standards and certifications (such as BAP) among farmers, processors, and distributors of aquaculture products. In *Amici*'s view, this interest is harmed when third parties distort what "sustainable" means to a reasonable consumer, by either misconstruing best practices standards such as BAP or relying on unreasonable assumptions to support overbroad deceptive marketing claims. Accordingly, *Amici* submit this brief to explain why BAP certification standards inform how a reasonable consumer would understand "sustainable" seafood marketing.

## FACTUAL BACKGROUND

Plaintiffs Jeffrey Spindel and Kevin McCarthy ("Plaintiffs") have filed a complaint alleging that Gorton's has engaged in deceptive marketing. Compl. ¶¶ 3-9. Gorton's is a major seafood company. *Id.* ¶ 1. Plaintiffs allege that Gorton's has made misleading representations regarding its tilapia products—namely, that the products are "sustainably sourced." *Id.* ¶¶ 3-5.

Plaintiffs allege that Gorton's' statements regarding its products being "sustainably sourced" suggest that they are "sustainably sourced in accordance with high environmental and animal welfare standards." *Id.* ¶ 43; *see id.* ¶¶ 15-24. Plaintiffs allege that the tilapia products are in fact made using "unsustainable practices that are environmentally destructive and inhumane." *Id.* ¶¶ 5, 25. Specifically, Plaintiffs allege that Gorton's' tilapia products are sourced from industrial fish farms, *id.* ¶ 25, using pond aquaculture that, according to Plaintiff, necessarily: (1) threatens the environment through escape events, *id.* ¶¶ 29-31; (2) requires harmful use of artificial antibiotics and chemicals, *id.* ¶¶ 32-41; and (3) creates crowded and unsanitary environments, *id.* ¶¶ 42-47. According to Plaintiffs, the use of pond aquaculture in and of itself renders sustainability representations false and misleading. *Id.* ¶ 48.

As alleged in the Complaint, Gorton's' website explains that the company "utilizes the latest scientific data and best practices to ensure our seafood is responsibly sourced, made, and

packaged for generations to come." *See* Compl. ¶ 18 (incorporating Gorton's website by reference, citing Gorton's, *Responsibility*, https://www.gortons.com/sustainability/). Specifically, Gorton's states that "[o]ver 99% of our seafood is from sources that are certified with the Marine Stewardship Council (MSC), Aquaculture Stewardship Council (ASC), Best Aquaculture Practices (BAP) or in a credible Fishery Improvement Project."[2] Gorton's' website also states that it has "partnered with the New England Aquarium on sustainability efforts for over 14 years, working to improve ocean health and promote sustainable fisheries."[3]

As part of that partnership, the Aquarium's ACCOL has advised Gorton's to utilize credible third-party certification to meet reasonable consumer perceptions for sustainably sourced farmed tilapia, resulting in Gorton's' requirement that 100% of its farmed tilapia are sourced from farms that are, at a minimum, certified by either BAP or ASC. BAP is a third-party aquaculture certification program, administered by GSA, which establishes industry-leading standards for responsibly sourced aquaculture.[4] BAP addresses four key areas of sustainability: environmental responsibility, social responsibility, food safety, and animal health and welfare.[5] BAP provides standards for each step in the aquaculture production chain (processing plants, farms, hatcheries, and feed mills), and aquaculture producers may obtain certification for adherence to these

---

[2] *See* Gorton's, *Responsibility*, https://www.gortons.com/sustainability.

[3] *Id.*

[4] *See* https://www.bapcertification.org/Home. GSA requests that the Court take judicial notice of the contents of the websites cited herein, as well as the documents available through those websites. *See Delaney v. Baker*, 511 F. Supp. 3d 55, 66 n.4 (D. Mass. 2021) (taking judicial notice of facts stated on website because they were not subject to reasonable dispute); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (court may take judicial notice of information on website when website's authenticity and accuracy of information not in dispute). These materials simply describe background facts regarding the nature of standards that set forth best practices for responsible aquaculture generally and tilapia farms particularly. GSA cites the BAP website and BAP standards not for the purpose of demonstrating whether Gorton's in fact complied with best practices, but simply to describe the parameters established by independent third parties to define responsible aquaculture.

[5] *See* https://www.bapcertification.org/WhatWeDo.

4

standards.[6] Certification by independent, accredited certification bodies via annual audit provides

verification that producers are following best practices to deliver farmed seafood responsibly.[7]

## ARGUMENT

### I.  New York and California Law Prohibits Only Deceptive Conduct That Is Misleading to a Reasonable Consumer.

Plaintiffs asserts claims based on allegedly deceptive or misleading statements. The

complaint alleges that Gorton's violated New York General Business Law ("GBL") §§ 349 and

350. Compl. ¶¶ 111-35. Plaintiffs' complaint also alleges that Gorton's violated California's

Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 ("CLRA"), False Advertising Law,

Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL"), and Unfair Competition Law, Cal. Bus. & Prof.

Code § 17200 *et seq.* ("UCL"). Compl. ¶¶ 136-65. Plaintiffs claim that Gorton's sustainability

representations violate these New York and California statutes. *Id.* ¶¶ 113, 126, 141, 148, 158.

Plaintiffs also allege violations of various other states' consumer protection statutes. *Id.* ¶ 169.

Under both New York and California law, a claim for deceptive practices are subject to the

"reasonable consumer" standard. *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)

("[C]laims under the California consumer protection statutes are governed by the 'reasonable

consumer' test. . . . [T]he reasonable consumer standard requires a probability that a significant

portion of the general consuming public or of targeted consumers, acting reasonably in the

circumstances, could be misled." (quotation marks omitted); *Fink v. Time Warner Cable*, 714 F.3d

739, 741 (2d Cir. 2013) (Under New York law, in the consumer protection context, a plaintiff must

show that the allegedly deceptive statements "were likely to mislead a reasonable consumer acting

reasonably under the circumstances"). *See generally* 16 C.F.R. § 260.2. Thus, a complaint may be

---

[6] *See* https://www.bapcertification.org/Home.
[7] *See* https://www.bapcertification.org/WhatWeDo.

dismissed where, as a matter of law, it fails to set forth plausible allegations that a reasonable consumer would be misled by the statements at issue. *See Ebner*, 838 F.3d at 966 (dismissing claims under consumer protection statutes because the plaintiff had not, as a matter of law, alleged a plausible claim that the marketing was false, deceptive, or misleading); *Fink*, 714 F.3d at 741.

In *Amici*'s view, applying the "reasonable consumer" standard, Plaintiffs have not stated a plausible claim for relief based on Gorton's' sustainability representations.

## II.    References to "Sustainably Sourced" Seafood Would Be Understood by a Reasonable Consumer to Indicate Compliance with Industry-Leading Standards, Such as BAP, for Responsible Aquaculture.

Gorton's has described its tilapia products, which come from fish farms, as "sustainably sourced." Compl. ¶¶ 3-4. Gorton's' statements regarding the sustainability of fish sourced from marine aquaculture echo those that appear on government websites, such as the National Oceanic and Atmospheric Administration ("NOAA"). According to NOAA, "marine aquaculture," which refers to "the breeding, rearing, and harvesting of aquatic plants and animals . . . in the ocean, or on land in tanks and ponds," provides "economically and environmentally sustainable seafood that complements and supports our wild fisheries production."[8] According to NOAA, "[a]quaculture is one of the most resource-efficient ways to produce protein with fewer environmental impacts relative to other animal proteins. . . . Farmed-raised [*sic*] fish complement wild harvests as a way to provide more sustainable seafood to consumers."[9]

Plaintiffs allege that a consumer would understand Gorton's' sustainability representations to suggest that its products are "sustainably sourced in accordance with high environmental and

---

[8]     NOAA Fisheries, Understanding Marine Aquaculture, *available at* https://www.fisheries.noaa.gov/insight/understanding-marine-aquaculture.   The Court may take judicial notice of NOAA's website. *Gent v. CUNA Mut. Ins. Society*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (government website is judicially noticeable); *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003).

[9] NOAA Fisheries, Sustainable Seafood, *available at* https://www.fisheries.noaa.gov/topic/sustainable-seafood#farmed-seafood.

animal welfare standards." Compl. ¶ 4. In fact, Gorton's sustainability representations were tied to sourcing of product produced in accordance with best practices programs, including product produced in compliance with BAP standards. *Id.* ¶ 18 (web pages linked therein describing sustainability in terms of compliance with BAP certification requirements). Tilapia sourced from farms that abide by best practices is accurately described as "sustainably sourced."

The Global Sustainable Seafood Initiative ("GSSI")—a public-private partnership working with the Food and Agriculture Organization ("FAO") of the United Nations ("UN") on the implementation of the UN Sustainable Development Goals and collaborating with the Consumer Goods Forum's Sustainable Supply Chain Initiative—benchmarks and recognizes third-party certification and auditing schemes, including BAP,[10] as a means to achieve more sustainable seafood production and sourcing.[11] GSSI's benchmarking tool is based on the FAO's Technical Guidelines for Aquaculture certification, which outlines the necessary elements of "credible aquaculture certification schemes."[12] Thus, sustainability-focused organizations like GSSI view sustainably sourced seafood through the lens of compliance with best practices and independent third-party certification and auditing.

Similarly, Monterey Bay Aquarium Seafood Watch ("Seafood Watch"), an organization which encourages consumers to "choose environmentally sustainable seafood,"[13] specifically recommends that consumers buy BAP-certified tilapia products from all production systems, "[w]orldwide."[14]

---

[10] *See* https://www.ourgssi.org/gssi-recognized-certification/.

[11] *See* https://www.ourgssi.org/what-we-do/; https://www.ourgssi.org/gssi-ssci-collaboration/.

[12] *See* https://www.fao.org/publications/card/en/c/0ec15d4a-6295-51a5-af16-5c724c62de25/.

[13] https://www.seafoodwatch.org/.

[14] https://www.seafoodwatch.org/recommendation/tilapia/tilapia-25769?species=231. Plaintiffs' Complaint references Seafood Watch (Compl. ¶ 27), but misleadingly alleges that Seafood Watch recommends that consumers avoid tilapia famed in China. Seafood Watch, however, only recommends avoidance of China-sourced tilapia that is *not* certified. Gorton's tilapia *is* certified. Compl. ¶ 18 n.8.

The nation's leading seafood sellers in the retail, grocery, and restaurant industries likewise define sustainably sourced products as those sourced in compliance with a defined sustainable seafood policy, which commonly specify suppliers certified to credible standards, including BAP:

- According to Walmart's seafood policy, Walmart aspires to require, by 2025, "all fresh and frozen, farmed and wild seafood suppliers to source from fisheries who are . . .[t]hird-party certified as sustainable using Marine Stewardship Council (MSC) or **Best Aquaculture Practices (BAP)**, or certified by a program which follows the FAO Guidelines and is recognized by the Global Sustainable Seafood Initiative (GSSI) as such";[15]

- Kroger, the world's largest supermarket chain, explains in its Seafood Sustainability Policy that "[w]e rely on third-party certification standards to increase the environmental sustainability of the species we procure . . . . *Our goal is to source 100% of farm-raised seafood in our Seafood Department from farms that are **Best Aquaculture Practices (BAP)** 2-star or greater certified, Aquaculture Stewardship Council (ASC) certified or GLOBAL G.A.P. certified, by 2023"*.[16]

These are just examples of the many companies that recognize BAP standards (or other similar programs) as a leading guide for responsible aquaculture.[17] This consensus among the retailer, grocery, and restaurant industries—who understand what their customers demand—strongly indicates that sustainability representations, applied to seafood, would be understood by a reasonable consumer as describing seafood sourced according to industry best practices.

Sustainability representations like those made by Gorton's are not misleading to a reasonable consumer simply because Gorton's' products are sourced from farms using pond aquaculture. Instead, to plausibly allege that such representations are deceptive, a plaintiff must allege something more, such as failure to abide by best practices. Plaintiffs have not done so.

---

[15] Walmart Seafood Policy, *available at*: https://corporate.walmart.com/policies#seafood-policy (emphasis added).

[16] Kroger Seafood Sustainability Policy, *available at* https://www.thekrogerco.com/wp-content/uploads/2018/12/The-Kroger-Co_Seafood-Sustainability-Policy_2018-July.pdf (bold emphasis added; italics in original).

[17] *See* https://www.bapcertification.org/WhereToFind.

Plaintiffs' Complaint fails to set forth a plausible claim that Gorton's representations are misleading because the Complaint alleges simply that Gorton's sources seafood, at least in part, from farms in China which allegedly use pond aquaculture as well as antibiotics and chemicals, but fails to allege that farms that actually source product to Gorton's actually engage in aquaculture practices that are inconsistent with best practices. Compl. ¶¶ 29, 32, 42. As described below, BAP standards permit use of pond aquaculture as well as antibiotics and other chemicals, within certain parameters. Plaintiffs apparently wish to substitute their own standards in place of the relevant generally accepted standards, such as BAP, and to thereby create through the judicial process a new (and unrealistic) baseline for responsible aquaculture practices. A reasonable consumer would not take such a view, but would instead view Gorton's' sustainability representations in light of best practices for the industry. Absent a plausible claim that Gorton's sources tilapia products from farms that do not satisfy best practices, therefore, Plaintiff's claims must fail.

III. **Plaintiffs Have Not Plausibly Alleged That Gorton's Tilapia Products Fail to Meet Industry-Recognized Standards for Responsible Aquaculture.**

A. **Industry-leading standards such as BAP are designed to promote responsible aquaculture by requiring food safety, social responsibility, environmental responsibility, and animal health and welfare.**

BAP standards are achievable, science-based, and continuously improved global performance standards for the aquaculture supply chain that assure healthful foods are produced through environmentally and socially responsible means.[18] These standards are designed to address four key areas of sustainability—environmental responsibility, social responsibility, food safety, and animal health and welfare—at each step of the aquaculture production chain.[19]

---

[18] *See* BAP Aquaculture Facility Certification, BAP Farm Standard, at 2, *available at* https://www.bapcertification.org/Downloadables/pdf/PI%20-%20Standard%20-%20Farm%20Standard%20-%20Issue%203.0%20-%2001-March-2021-GSA.pdf.
[19] https://www.bapcertification.org/Home.

BAP is a program to certify compliance with responsible aquaculture standards.[20] Using a rigorous process, BAP has established standards to ensure responsible aquaculture processes, including hatcheries, farms, feed mills, and processing plants.[21] Each set of standards has been developed by the relevant, independent Technical Committee ("TC"), comprised of technical experts and representatives of groups interested in or affected by the standards.[22] Proposed standards are published for 60 days of public comment.[23] After any revision, proposed standards are reviewed by a Standards Oversight Committee ("SOC") with broad stakeholder representation: one-third non-governmental conservation and social justice organizations, one-third academic and regulatory interests, and one-third industry.[24] Final standards must be approved by the SOC as well as GSA's Board of directors.[25] These standards are then regularly reviewed and revised as appropriate.[26] All BAP standards are benchmarked with guidelines promulgated by internationally recognized third parties, including the Global Social Compliance Programme and GSSI.[27]

**B.      Certification for aquaculture farms under industry-leading standards such as BAP promote responsible aquaculture by requiring adherence to rigorous guidelines regarding animal welfare and use of antibiotics and chemicals.**

BAP has established aquaculture farm standards.[28] These standards address food safety, social accountability, environmental responsibility, and animal health and welfare.[29] Food safety

---

[20] https://www.bapcertification.org/WhoWeAre.

[21] https://www.bapcertification.org/Home; https://www.bapcertification.org/Standards.

[22] Best      Aquaculture      Practices      Standards      Development,      at      3,      *available      at* https://www.bapcertification.org/Downloadables/pdf/GSA%20-%20Standards%20Process%20Document%20-%20Issue%203.0%20-%2025-February-2022.pdf.

[23] *Id.* at 4.

[24] *Id.* at 2-4.

[25] *Id.* at 4-5.

[26] *Id.* at 5.

[27] https://www.bapcertification.org/WhoWeAre.

[28] BAP      Aquaculture      Facility      Certification,      BAP      Farm      Standard,      *available      at* https://www.bapcertification.org/Downloadables/pdf/PI%20-%20Standard%20-%20Farm%20Standard%20-%20Issue%203.0%20-%2001-March-2021-GSA.pdf.

[29] *Id.* at 2.

governs not only potential contamination risks, but also chemical and drug management.[30] Social accountability addresses legal and regulatory compliance, community relations, and worker rights and employee relations.[31] Environmental responsibility addresses, among other things, habitat protection, water quality, control of escapes, and biodiversity and wildlife protection.[32] Animal health and welfare addresses health and biosecurity, as well as general welfare.[33] These standards provide guidance to aquaculture producers regarding a variety of issues, including those that are the subject of the Complaint: use of pond aquaculture as well as antibiotics and other chemicals.

These standards are discussed in more detail below. GSA offers this overview of the BAP standards not to establish that Gorton's did nor did not comply with best practices, but rather to demonstrate that Plaintiffs rely upon over-broad, conclusory, and vague allegations. Rather than allege that Gorton's' suppliers violate best practices by allowing fish escapes, overprescribing antibiotics, or permitting overcrowding, Plaintiffs generally allege that the use of pond aquaculture in China generally is necessarily inconsistent with sustainability representations. Plaintiffs' failure to allege violations of best practices standards and to tie those violations to Gorton's' suppliers means that Plaintiffs have failed to plausibly allege a claim for deceptive or misleading practices.

**1.    The Complaint does not allege any failure to abide by industry-leading standards, such as those established by BAP, for the safe employment of net pen aquaculture.**

Plaintiffs allege that the use of pond aquaculture is an "ecologically dangerous method of tilapia production." Compl. ¶ 29. Plaintiffs assert that escaped tilapia and disease may spread from the farms into the environment, risking damage to the ecosystem. *Id.* ¶¶ 30-31. Plaintiffs also assert that pond aquaculture inflicts unnecessary suffering because crowded environments increase

---

[30] *Id.* at 10-17.
[31] *Id.* at 18-25.
[32] *Id.* at 26-54.
[33] *Id.* at 55-59.

11

mortality rates from stress levels and predation. *Id.* ¶¶ 43-47. In fact, there is no basis to conclude that pond aquaculture is *per se* objectionable. Rather, what matters is adherence to BAP environmental as well as animal health and welfare standards. Plaintiffs have not alleged that Gorton's tilapia is sourced from farms using practices that are inconsistent with such standards.

*Escapes*. BAP Standard 3.49 provides: "All holding, transport and culture systems shall be designed, operated and maintained to minimize the release of aquatic animals at any life stage."[34] Further, BAP Standard 3.53 specifically addresses tilapia farming, providing that "[f]or tilapia farms in watershed where tilapia are not indigenous and not established, farms shall have at least two independent containment systems to prevent escapes."[35] The standards require containment systems to be designed and constructed using best practices, such as earthen pond embankments designed with proper slopes, using soils that are suitable for holding water, and construction techniques designed to avoid embankment failure.[36] BAP standards also advise that, for freshwater ponds, the elevation of pond embankments should be sufficient to avoid flooding, *i.e.* overtopping, by a 100-year precipitation event; when heavy rainfalls are expected, pond levels are to be drawn down to prevent overtopping.[37] Because the possibility of escape cannot be eliminated, however, BAP requires implementation of a written containment plan that addresses escape prevention and escape response.[38] Escape prevention measures must include, among other things, annual site risk analysis, annual inspection, and predator deterrence procedures; in the event of escape, BAP-certified farms must also have equipment for rapid response.[39]

---

[34] BAP Aquaculture Facility Certification, BAP Farm Standard, at 45 *available at* https://www.bapcertification.org/Downloadables/pdf/PI%20-%20Standard%20-%20Farm%20Standard%20-%20Issue%203.0%20-%2001-March-2021-GSA.pdf.
[35] *Id.*
[36] *Id.* at 46.
[37] *Id.* at 48.
[38] *Id.* at 46-47.
[39] *Id.* at 46-48.

*Health and Welfare*. BAP standards also impose strict animal welfare requirements. BAP-certified farms must regularly assess welfare indicators of individual fish. BAP recognizes that farm conditions "should be managed to avoid situations that could lead to stress, injury or disease."[40] This requires application of a "maximum biomass limit based on standard best management practices and operational welfare indicators" as well as feeding that is "managed to avoid stress."[41] As BAP recognizes, "[a]ttention to aquatic animal welfare is a characteristic of responsible aquaculture."[42] Accordingly, BAP standards require regular monitoring of individual fish welfare. Standard 4.6 requires measurement of mortalities and regular monitoring of physical abnormalities such as lesions, abrasions, fin damage, and gill damage.[43] BAP-certified farms must also regularly assess group-based welfare indicators of environmental quality. Standard 4.7 requires water quality to be regularly monitored and maintained within the tolerance limits established for the species and life-stage farmed.[44] Standard. 4.8 requires the farm to regularly measure feeding response and swimming behavior as additional welfare indicators.[45]

*Health and biosecurity*. BAP standards also require policies to maintain health and biosecurity. BAP Standard 4.1 provides: "The farm shall have in place an operational Animal Health Management Plan or manual, reviewed and approved by an aquatic animal health specialist," that addresses specific areas relating to fish health.[46] Specifically, the plan must include protocols for water quality management, protocols for feeding, and routine disease surveillance permitting rapid response to disease outbreaks.[47] The farm must maintain records to demonstrate

---

[40] *Id.* at 58.
[41] *Id.*
[42] *Id.*
[43] *Id.* at 57-58.
[44] *Id.*
[45] *Id.* at 57, 59.
[46] *Id.* at 55.
[47] *Id.*

compliance with the Animal Health Management Plan, and must have the plan evaluated once per year to assess compliance.[48] Relatedly, BAP Standard 4.2 requires an operational Biosecurity Plan to minimize risks from introduction and spread of aquatic animal diseases.[49] This plan must identify likely infectious disease risks, establish critical control points, institute active control measures, and set out hygiene and sanitation protocols.[50]

*Biodiversity and Wildlife Protection*. BAP also establishes standards relating to predation. Specifically, under BAP Standard 3.63, the "farm must use humane methods of predator exclusion and deterrence."[51] BAP provides that "[a] combination of approaches" to exclusion and deterrence is encouraged. BAP encourages use of barriers, which are "often the most effective approach to control the impacts of predation"; specifically, ponds can be "covered with line, wire, netting or screens.[52] Further, BAP encourages use of acoustic, visual, and physical deterrents.[53] BAP standards mandate audits of the farm's wildlife predator exclusion and deterrence measures.[54]

Plaintiffs' Complaint is bereft of plausible allegations showing that Gorton's products are sourced from farms with practices that are inconsistent these best practices. As BAP standards suggest, generalized allegations regarding the use of pond aquaculture does not necessarily mean that the aquaculture practices are not environmentally responsible or that any representation regarding the responsible nature of its practices is false or misleading. Nor do Plaintiffs' generalized assertions regarding escapes or fish stress resulting from crowded conditions suffice. Plaintiff's implicit assumption that *any* use of pond aquaculture renders a marketer's

---

[48] *Id.* at 55-56.
[49] *Id.*
[50] *Id.* at 56
[51] *Id.* at 48.
[52] *Id.* at 50.
[53] *Id.*
[54] *Id.*

representations regarding sustainable sourcing of aquaculture products false is misguided and unreasonable. More is required to plausibly allege that a producer has failed to responsibly source its aquaculture products contrary to its representations, such as failure to implement generally accepted standards—like those established by BAP—to ensure responsible pond operations by minimizing fish escapes, providing for animal health and welfare, and promoting sound biosecurity and disease management. *See* 16 C.F.R. § 260.2 (environmental marketing claims have a reasonable basis, and therefore are not misleading, if substantiated by "competent and reliable scientific evidence . . . based on standards generally accepted in the relevant scientific fields"). Plaintiffs must, but have not, alleged that Gorton's actually sources tilapia from farms that fail to abide by best practices. Absent such allegations, their claims must fail.

> **2.      The Complaint does not allege any failure to abide by industry-leading standards, such as those established by BAP, for the safe employment of chemicals and antibiotics.**

Plaintiffs also allege that the use of antimicrobials and other chemicals pose risks to human health and the environment. Compl. ¶¶ 32-41. Again, however, Plaintiffs seek to enforce an unrealistic standard that does not reflect industry best practices. Responsible and prudent use of antimicrobials is compatible with high environmental and welfare standards, as long as such uses adhere to guidance—such as the guidance provided by BAP—regarding responsible use of chemicals. Accordingly, general allegations that some farms may use chemicals, absent allegations explaining how Gorton's suppliers deviate from best practices, should not suffice to state a claim.

BAP establishes reasonable guidelines governing the use of antibiotics and chemicals. BAP Standard 1.2 provides: "Use of any treatment with antimicrobial agents shall be based only on recommendations and authorizations overseen by a qualified aquatic animal health specialist or

veterinarian and only to treat diagnosed diseases."[55] Under this standard, treatment of fish diseases must be overseen by a qualified fish health professional, either a veterinarian or another specialist.[56] BAP Standard 1.3 addresses the use of chemicals with tilapia specifically, stating: "any usage of antimicrobial agents shall not exceed three treatments per on-growing cycle, where treatment comprises a single course of antimicrobial agents given to treat a specific disease event over a defined period followed by the completion of an appropriate withdrawal period prior to harvest."[57] Standard 1.6 further prohibits uses of antimicrobial agents or chemicals prohibited in the producing or importing country; pursuant to this standard, the use of malachite green, heavy metals, parasiticides and hormones are prohibited wherever the importing country bans such products.[58] Standard 1.14 also prohibits the use of any agents designated as "Critically Important for Human Medicine by the World Health Organization."[59] Standard 1.7 specifically preclude use of antimicrobial agents or hormones for growth promotion or prophylactic disease prevention.[60] Accordingly, the overseeing veterinarian or aquatic animal health specialist may only prescribe antibiotics to treat diagnosed diseases—not for preventative or other purposes.

As with Plaintiffs' allegations regarding use of pond aquaculture, BAP standards suggest that generalized allegations regarding the mere use of antimicrobials and chemicals do not suffice to plausibly allege that Gorton's has made any misrepresentations regarding the responsible nature of its tilapia products. Plaintiffs wrongly assume that *any* use of antibiotics or chemicals is

---

[55] BAP Aquaculture Facility Certification, BAP Farm Standard, at 11, *available at* https://www.bapcertification.org/Downloadables/pdf/PI%20-%20Standard%20-%20Farm%20Standard%20-%20Issue%203.0%20-%2001-March-2021-GSA.pdf.
[56] *Id.* at 12.
[57] *Id.* at 11.
[58] *Id.* at 11, 13.
[59] BAP Aquaculture Facility Certification, BAP Farm Standard, at 11, 15 *available at* https://www.bapcertification.org/Downloadables/pdf/PI%20-%20Standard%20-%20Farm%20Standard%20-%20Issue%203.0%20-%2001-March-2021-GSA.pdf.
[60] *Id.* at 11, 13.

incompatible with representations regarding responsibly sourced seafood. Plaintiffs also fail to tie any allegations of misuse of antibiotics or other chemicals to farms that supply product to Gorton's. Mere use of antibiotics and other chemicals in the course of good husbandry, pursuant to best practices as described in BAP standards, does not negate a producer's claim that its seafood is sustainably sourced. Plaintiffs' failure to allege that Gorton's did not source its tilapia products from farms that follow reasonable standards—such as those established by BAP—to ensure appropriate use of chemicals and antibiotics should defeat its misrepresentation claims.

### C. Certification under industry-leading standards such as BAP requires a rigorous audit by independent, accredited third parties.

As the materials cited by Plaintiffs demonstrate, Gorton's sources its tilapia from BAP-certified farms. *See* Compl. ¶ 18 & n.8. Aquaculture companies must go through a rigorous process to obtain certification under BAP. The rigorous, objective audit process required to obtain BAP certification provides a reasonable basis for making claims regarding the responsible nature of aquaculture processes employed in producing seafood. *See generally* 16 C.F.R. § 260.2 (noting that marketers' claims must be "supported by a reasonable basis" before they make claims).

BAP certification is available only from independent certification bodies ("CBs").[61] Each CB must be accredited to ISO 17065, which establishes uniform requirements for the competence, consistent operation and impartiality of bodies certifying products, processes and services.[62] CBs must submit to an audit of their quality management systems, and obtain accreditation through a member of the International Accreditation Forum to apply BAP standards.[63] A CB is permitted to work only within the specific fields of expertise relating to the BAP seafood categories for which

---

[61] https://www.bapcertification.org/WhatWeDo/ProgramIntegrity.

[62] *See* Global Seafood Alliance, Best Aquaculture Practices Standards, Issue 14.10, at 9, *available at* https://www.bapcertification.org/Downloadables/pdf/BAP%20-%20CB%20Requirements%20Document%20-%20Issue%2014.10%20-%2018-August-2021.pdf.

[63] *Id.* at 9-14.

they are approved.[64] Further, each CB's auditors must have appropriate qualification, training, and skills to perform an evaluation against the relevant BAP standards.[65]

BAP conducts training for the auditors employed by each CB. The BAP Auditor and Industry Observer Training Course is an intensive, classroom-based seminar which provides a detailed explanation of the various BAP standards.[66] Auditors are required to have no conflict of interest, and individuals who work as consultants for a given company are thus excluded as auditor candidates of that company.[67] Auditors must also meet minimum competency requirements, and must complete pre-work, case studies, classroom instruction, and a final examination.[68]

Audits of aquaculture facilities are rigorous and conducted annually.[69] Audits require an opening meeting; site assessment; collection of samples for testing; review of management systems, records, documents and procedures; employee interviews; traceability exercises; review of non-conformities; and a closing meeting.[70] All BAP standard sections must be covered by reviewing the relevant facility's records, together with an inspection.[71] The auditor must then provide a full report.[72] Any non-conformities must have facility corrective action responses and objective evidence submitted documenting effective correction and implementation.[73] A committee established by the CB must then make a final decision regarding certification, which

---

[64] *Id.* at 13.
[65] *Id.* at 16.
[66] BAP Auditor Competency and Course Approval Requirements, Issue 11.3 at 2, *available at* https://www.bapcertification.org/Downloadables/pdf/BAP%20-%20Auditor%20Competency%20and%20Course%20Approval%20Requirements%20-%20Issue%2011.3%20-%2005-January-2021.pdf.
[67] *Id.*
[68] *Id.* at 3-5, 7.
[69] Global Seafood Alliance, Best Aquaculture Practices Standards, Issue 14.10, at 28-29, *available at* https://www.bapcertification.org/Downloadables/pdf/BAP%20-%20CB%20Requirements%20Document%20-%20Issue%2014.10%20-%2018-August-2021.pdf
[70] *Id.* at 32.
[71] *Id.*
[72] *Id.* at 39.
[73] *Id.*

must be impartial and free from conflict of interest, to ensure (1) that the auditors were impartial and technically competent; (2) that all requirements of the relevant standards have been met; and (3) that the report provides satisfactory evidence that all areas within the scope of the certification have been investigated.[74] Certified farms are publicly listed on BAP's website.[75]

In sum, BAP not only establishes industry-leading standards designed to promote responsible aquaculture, but it also ensures that those obtaining BAP certification are rigorously audited to ensure compliance with those standards.

### D. A reasonable consumer would understand references to "sustainably sourced" seafood to refer to seafood sourced from practices certified to comply with industry-leading standards, such as BAP.

In *Amici*'s view, Plaintiff's Complaint is premised upon an unrealistic, baseless—and therefore unreasonable—standard for alleging that a marketer's sustainability representations are false or misleading. A reasonable consumer would understand marketing references to sustainably sourced seafood as meaning that the seafood was produced in compliance with credible standards designed to promote responsible sourcing of seafood—not that the aquaculture producer (1) has eliminated all environmental impacts, an unreasonable standard which no animal food sourcing could possibly meet, or (2) avoids practices that are in fact compliant with industry-leading standards. Industry standards such as BAP establish high environmental, social, and animal welfare standards, as recognized by global benchmarking organizations such as GSSI. A reasonable consumer would not expect that sustainability representations require aquaculture producers to exceed these independently recognized standards for responsible aquaculture. Indeed,

---

[74] *Id.* at 39-40.
[75] *See* https://www.bapcertification.org/Producers.

the Monterey Bay Aquarium "Seafood Watch" recommendations relied upon by Plaintiffs, *see* Compl. ¶ 27, rates BAP-certified tilapia from China as "buy," not "avoid."[76]

If Plaintiffs' Complaint states a viable claim for misrepresentation, then even merchants who source from conscientious aquaculture producers—those which have been certified as having satisfied BAP or comparable standards—will be subjected to potential liability simply because they make sustainability representations while sourcing from producers which employ pond aquaculture pursuant to strict environmental and animal welfare protocols, appropriately prescribing antibiotics and disinfectants. *Amici* believe that such an outcome would ultimately be detrimental to the very cause of environmental sustainability, as it would discourage aquaculture producers from taking the measures necessary to obtain BAP or comparable certification. One of the major benefits of BAP certification is the ability to make verified claims regarding the responsible nature of the producer's aquaculture practices. If adherence to, and representations regarding, compliance with industry-leading standards can give rise to consumer fraud claims, the law will have created a perverse disincentive to undertake the efforts necessary to comply with the standards designed to promote ever-increasing sustainability. Such an outcome would distort the reasonable consumer standard under state consumer protection laws.

## CONCLUSION

*Amici* respectfully urge the Court to hold that Plaintiffs have failed to plead a plausible consumer fraud or false advertising claim based on Gorton's' sustainability representations. Plaintiffs must allege that Gorton's failed to abide by accepted aquaculture best practices in order to sustain a claim for fraud or misrepresentation. Plaintiffs have not done so here.

---

[76] *See* https://www.seafoodwatch.org/recommendation/tilapia/tilapia-25769?species=231.

Dated: July 1, 2022                       Respectfully submitted,

/s/ Mark B. Rosen
Mark B. Rosen (BBO # 669619)
PIERCE ATWOOD LLP
One New Hampshire Ave.
Suite 350
Portsmouth, NH 03801
Phone: (603) 433-6300
mrosen@pierceatwood.com

Joshua D. Dunlap (BBO # 672312)
PIERCE ATWOOD LLP
254 Commercial Street
Portland, ME 04101
Phone: (207) 791-1103
jdunlap@pierceatwood.com

*Attorneys for Nonparty Amicus Curiae*
*Global Seafood Alliance*

/s/ Sarah P. Kelly
Sarah P. Kelly (BBO# 664267)
NUTTER, MCCLENNEN & FISH, LLP
Seaport West, 155 Seaport Blvd.
Boston, MA 02210
Phone: (617) 439-2000
skelly@nutter.com

*Attorneys for Nonparty Amicus Curiae*
*New England Aquarium*